[Civ. No. 5487. First Appellate District, Division One.—June 25, 1927.]

STELLA DEE WEAVER, Respondent, v. ATLANTIAN CONSTRUCTION COMPANY (a Corporation) et al., Appellants.

Janeway, Beach & Pratt, Wood, Janeway & Pratt and S. T. Hankey for Appellants.

Cooper, Collings & Shreve for Respondent.

CAMPBELL, J., *pro tem.*—This is an action brought by respondent against Atlantian Construction Company, a corporation, and J. H. Meyering, William P. Mason, D. H. Naylor, Jr., and A. Y. Jameson, alleged to be the stockholders of the corporation and also alleged to be copartners therein. Judgment was entered against the corporation and two of the directors and stockholders, namely, J. H. Meyering and William P. Mason, in the sum of $2,000, together with interest. Atlantian Construction Company and J. H. Meyering, one of the directors and stockholders, have appealed.

Appellants urge that the judgment cannot be sustained for the reasons: "1. There is no warrant either in the facts

or the law for a judgment against the appellant J. H. Meyering as a copartner of the defendant William P. Mason; 2. The respondent settled the matter of which she complains by a contract in writing between herself and the appellant corporation."

The Atlantian Construction Company was a building company and was duly incorporated on June 10, 1921, and a copy of the articles of incorporation was duly filed with the county clerk of Los Angeles County, the city of Los Angeles being the principal place of business of the corporation. The capital stock of the corporation was $100,000, divided into 5,000 shares of the preferred stock and 5,000 shares of common stock, each of the par value of $10 per share. The incorporators were W. P. Mason, J. H. Meyering, and W. H. Hicks, who were the first directors, and each subscribed $500—that is, for fifty shares of stock or a total of $1,500. At the first meeting of directors held on June 15, 1921, appellant J. H. Meyering was appointed president and treasurer, W. H. Hicks, vice-president and general manager, and William P. Mason, secretary. Later on negotiations were entered into for an arrangement whereby W. H. Hicks was to retire and the defendants D. H. Naylor and A. Y. Jameson were to become stockholders and directors, but this arrangement was never consummated; and, although on January 4, 1922, W. H. Hicks had signed a conditional assignment of his interests in the corporation to all four individual defendants, that assignment never took effect inasmuch as the condition of its execution was never performed, and, therefore, on and up to the 4th of February, 1922, the date of the impugned transaction, there had been no change in the holding of the shares of the three incorporators, who were the only stockholders at that time. The defendant William P. Mason had charge of the office of the appellant corporation, and although appellant J. H. Meyering was the president, he had his office in a different part of the city.

Respondent testified that she never knew and never talked with the appellant Meyering and that all her dealings were with defendant Mason as secretary and took place in the office of the corporation, first in January, 1922, when her husband was with her, and again on February 4, 1922, when she purchased the stock in controversy and drew her

check for $2,000 in favor of appellant corporation, which she handed to defendant Mason, the secretary, and received from him a certificate for the shares of stock signed by defendant Mason, as secretary, and appellant Meyering, as president.

Defendant Mason testified that there was a proposition on foot that defendant Jameson and his friends would put money into the corporation and that Mr. Jameson had been talking to Mr. Weaver, the husband of respondent, about it. This was corroborated by Jameson himself, who says that he told Mr. Weaver that he contemplated doing so, and the defendant Mason further says that at the time of receiving the check that he told respondent he would protect her in the event of this proposition not going through.

Defendant Jameson testified that when he was told Mason had made a sale of stock to respondent he spoke to defendant Meyering over the telephone and advised him not to sign the stock certificate as Mason was figuring too much on profits, and appellant Meyering's testimony was that when the defendant Mason brought the stock over to his office for him to sign Mason stated to him that he had a special arrangement with respondent that if for any reason the proposition with Mr. Jameson and his friends did not go through, the $2,000 should be applied to the building of Mr. Weaver's house, which was in progress of construction by the Atlantian Construction Company and that this arrangement was quite satisfactory to him.

The alleged misrepresentations are set out in the amended complaint and in the findings of the court and are that defendant Mason represented to respondent that the appellant Atlantian Construction Company was a solvent and going concern; that defendants Jameson and Naylor were putting $35,000 into the business and that appellant Meyering and defendant Mason had put large sums of money and valuable rights and contracts into the business of the company and that the company was paying dividends of eight per cent and would eventually pay more that 100 per cent. That these representations were false is asserted by respondent and so found by the court, and we will therefore assume them to be false. There is, however, no evidence in the record—at least, we have been unable to find

any and none has been called to our attention—to show or tending to show that appellant Meyering had any knowledge whatever of the alleged misrepresentations made by Mason to respondent, nor is there any finding of fact to that effect.

■ The appellant company was a corporation *de jure* properly organized and existing under the laws of the state of California and was so found to be and was acting as such. The three incorporators, appellant Meyering, defendant Mason, and W. H. Hicks, who subscribed for fifty shares of stock each, were still the stockholders having the same equal holdings in the corporation. Unless there is evidence in the record to justify the court in disregarding the corporate entity of appellant corporation and treating the stockholders as partners, the appellant Meyering cannot be held liable as a partner on account of the alleged misrepresentations by defendant Mason.

There are no cases to be found in this state nor in any other jurisdiction, so far as we have been able to find, and none has been cited by counsel in their briefs, where the separate entity of a corporation has in a similar case been disregarded. There are a number of California cases holding that an agreement made by persons interested in anticipation of the formation of a corporation are bound by the agreement and that, if necessary to its enforcement, the corporate fiction will be ignored. These authorities are collected in *Conover* v. *Smith,* 83 Cal. App. 227 [256 Pac. 835], recently decided by this division of this court. Respondent has cited us to sections of California Jurisprudence as upholding her position. On looking up the cases cited in the notes to the text of California Jurisprudence set forth in respondent's brief, we find that in these cases there was some anterior agreement between the parties as to their respective rights in some business or undertaking, which, for the sake of convenience, was carried on in the form of a corporation. The effect of these cases is summed up in *Tower* v. *Wilson,* 45 Cal. App. 137 [188 Pac. 92], in which the court says: "They merely go to the point of holding that, as between the original incorporators, the corporation is a trustee, and the court will dispose of its assets in accordance with the original agreement made

between them, they, to that extent, some of the cases holding, being regarded as partners in the concern.''

There are three recent cases in California which deal with the subject of ignoring the separate entity of corporations where the interests of third parties are concerned, *Erkenbrecher* v. *Grant,* 187 Cal. 7 [200 Pac. 641], *Minifie* v. *Rowley,* 187 Cal. 481 [202 Pac. 673], and *Wenban Estate, Inc.,* v. *Hewlett,* 193 Cal. 675 [227 Pac. 723]. In the Erkenbrecher case Erkenbrecher was the owner of all outstanding shares of the capital stock of the company, some of them standing in the names of others, but in fact held in trust for him. The court held that there was nothing inequitable in recognizing the separate entities of Erkenbrecher and the corporation, in that the organization of the corporation and the transfer of his property to it were not in any manner fraudulent or prompted by dishonesty. In the Minifie case one man—Rowley—was the owner and holder of all outstanding stock except one share each held by others for the purpose of qualifying them as directors. Rowley personally had given two promissory notes for $5,000 each and for the purpose of renewing the notes gave a promissory note of the corporation, which he had formed and called the ''Rowley Investment Company,'' for $10,000, and there being no dealings with the corporation as distinct from the individual Rowley, the court held that to recognize the corporate entity as distinct from Rowley would result in the avoidance of a legal obligation and perpetrate an injustice. In the Wenban case Mrs. Wenban was the sole owner of all of the shares of stock of the corporation. The corporation sought to set aside certain bonds of the fruits of which Mrs. Wenban had had the benefit on the ground that they were null and void, being issued contrary to the provisions of section 359 of the Civil Code. The court ignored the separate entity of the corporation, holding that not to do so would result in fraud and injustice to a third person. In these three cases the corporation was in effect the *alter ego* of the individual.

In *Minifie* v. *Rowley, supra,* the court lays down the rule as follows: ''Before the acts and obligations of a corporation can be legally recognized as those of a particular person, and *vice versa,* the following combination of circumstances must be made to appear: first that the corporation is

not only influenced and governed by that person but that there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.''

The facts in the case here are widely different from the facts in the cases quoted: The appellant corporation was not the *alter ego* of the appellant Meyering; there were three members of the corporation, all holding an equal amount of the stock, and there is no evidence that Mason or Hicks held their stock in any way in trust for appellant Meyering. Therefore, it cannot be said that there was that unity of interest and ownership indicating a cessation of individuality and separateness of the person and the corporation, which the law requires before the corporate entity can be ignored. It further appeared that it was the purpose of the incorporators to sell stock; that a permit to do so had been secured from the corporation commissioner; that stock had been sold, and efforts made to sell other stock.

The fraudulent misrepresentations of facts by the defendant Mason cannot make his codirector Meyering personally liable unless it is proved that he had knowledge of and was a party to such misrepresentations, and of this there is no evidence nor is there any finding to that effect.

■ ''There is no reason why parties who have dealt with a corporation as a corporation afterwards should be allowed to claim more than they originally bargained for and to hold the stockholders personally liable. Such is the established rule beyond reasonable doubt'' (1 Cook on Corporations, 6th ed., 634). ''A creditor who deals with a corporation as a corporation cannot hold the stockholders liable as partners'' (*American etc. Co. v. Bulkley*, 107 Mich. 447 [65 N. W. 291]).

With reference to the finding of the existence of a copartnership between appellant Meyering and defendant Mason, there is no evidence of the community of interest between them necessary to create a copartnership. There is only the community of interest which all stockholders in the

same corporation have and which these three stockholders, Meyering, Mason, and Hicks, as such, may here be said to have had.

█ As to the other point urged that "the respondent settled the matter of which she complains by a contract in writing between herself and the appellant corporation," and that by reason thereof appellant is released from liability, there is no merit. There is no pleading by way of answer upon which such defense can be based, and as a consequence the findings are silent thereon. While the writing was received in evidence, it was received over respondent's objection. A release is an affirmative defense which must be pleaded and proven. (*Coles* v. *Soulsby,* 21 Cal. 47; *San Pedro Lumber Co.* v. *Reynolds,* 121 Cal. 74 [53 Pac. 410]; *Great Western etc.* v. *Chambers,* 153 Cal. 313 [95 Pac. 151].)

The judgment is reversed and the cause remanded.

Tyler, P. J., and Knight, J., concurred.